UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STANLEY W. WELLS, JR.,  Plaintiff,

v.  Civil Action No. 3:20-cv-843-DJH-CHL

UNITED PARCEL SERVICE AIRLINES,  Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stanley W. Wells, Jr. sued his former employer, Defendant United Parcel Service Co.[1] (UPS), alleging that UPS terminated him because of his race in violation of federal aviation statutes and regulations, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. §§ 1981 and 1985. (Docket No. 1) UPS now moves for summary judgment on all claims. (D.N. 29) Wells, who is proceeding pro se, did not respond to the motion. After careful consideration, and for the reasons explained below, the Court will grant the motion for summary judgment

**I.**

Wells began working at UPS as a First Officer pilot in 2019. (D.N. 29-1, PageID.129; D.N. 29-7, PageID.220) UPS is a "certified airline operating a fleet that includes Boeing 757s and 767s" for the "air transportation of express letters and packages." (D.N. 29-1, PageID.127) Wells had previously worked as a commercial pilot for Mesa Airlines operating passenger aircraft models CRJ 200, 700, and 900 (D.N. 29-3, PageID.159), but he needed additional training to learn how to operate the 757 and 767 aircraft used by UPS. (*Id.*, PageID.159–61)

---

[1] Wells incorrectly named the defendant as United Parcel Service Airlines in the complaint. (*See* D.N. 1, PageID.1; D.N. 29-1, PageID.127 n.1)

1

The UPS training program was "developed and approved by the [Federal Aviation Administration (FAA)]." (D.N. 29-1, PageID.128)  The first two phases of the program require trainees to complete "two weeks of classroom indoctrination and instruction on aircraft operations" and then "review[] computer-based modules and videos." (*Id.*)  Wells successfully finished both phases in May and early June of 2019. (*Id.*, PageID.129)  The third training phase "includes a series of six training modules, PT 1 through PT 6, with the instructor evaluating performance on each module at the conclusion of that training session." (*Id.*, PageID.128)  Once the trainee successfully completes all six modules, "the instructor conducts an in-person test known as a proficiency validation ("PV") evaluation to measure mastery of the entire unit." (*Id.*)

Wells began his phase-three training on June 9, 2019. (D.N. 29-4, PageID.184)  He completed PT 1 and PT 2 and was evaluated as performing with "normal progress." (*Id.*, PageID.187–88)  When Wells was evaluated for PT 3, 4, 5, and 6, however, his instructors made the following comments: (1) Wells "[h]ad difficulty us[ing] FLCH (Flight Level Change) on takeoff" and was "[u]nfamiliar with" key concepts (*id.*, PageID.190); (2) he "[s]tumbles on flows and callouts that he should know by now.  The training event took longer than the available time.  I graded the events as incomplete" (*id.*, PageID.193); (3) "[Wells] was doing slightly better today but not on target for PV.  Very slow on route mods. . . . Often misses standard callouts and FMA (Flight Mode Annunciator) changes" (*id.*, PageID.196); and (4) "Did not follow ATC (Air Traffic Control) clearance to fly runway heading . . . Did not know what to do regarding a RA (Resolution Advisory) flag . . . Consistently makes incorrect 1,000 feet calls and misses [a]pproaching minimums callouts." (*Id.*, PageID.198–99)

Following these evaluations, Wells's instructor recommended that he receive "additional training" and "be split from his partner, as [Wells] is slowing his progression." (D.N. 29-5,

PageID.214)  Wells completed two additional training sessions (*id.*, PageID.210), and after the second, his instructor noted that Wells "did much better than his previous additional tr[aining] session" but was "not yet ready to join the footprint of a normal student." (*Id.*, PageID.215)  The instructor identified several additional areas where Wells required further training before he would be able to advance. (*Id.*)  Because Wells had received two additional training sessions but "was still not recommended for his PV," the Training Review Board (TRB) met and reviewed his performance. (D.N. 29-6, PageID.218)  It concluded that two more rounds of training were appropriate. (*Id.*)  After completing those sessions, Wells took the proficiency validation evaluation to measure his competency of the PT 1 through 6 materials. (D.N. 29-4, PageID.208)  He did not pass. (*Id.*)  His evaluator wrote that "First Officer Wells did not meet proficiency requirements to pass the PV.  He rushes himself resulting in numerous errors.  Both legs of the PV were polluted with constant small errors resulting in lack of confidence and stress on both crewmembers.  His reduced situational awareness also resulted in gross errors." (*Id.*)

The TRB met again, and based on Wells's "ongoing lack of progress in mastering aircraft procedures," it recommended "discontinu[ing] training." (D.N. 29-6, PageID.219)  The Board noted "a clear failure to progress" and cited "anecdotal evidence based on conversations with his instructors" indicating that Wells "has extraordinary difficulty with retaining the training provided." (*Id.*)  Wells received official notice on July 19, 2019, that he had been terminated from UPS. (D.N. 29-7, PageID.220)  He subsequently filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that UPS had discriminated against him based on his race as an African American. (*Id.*)  The EEOC dismissed his charge (D.N. 1-1, PageID.7), and Wells filed the present suit within the required 90-day period, alleging discrimination in violation of Title VII of the Civil Rights Act and several federal statutory and regulatory provisions. (*See*

3

D.N. 1) Wells subsequently amended his complaint (D.N. 6), and the parties engaged in discovery. UPS now moves for summary judgment. (D.N. 29) Wells did not respond to the motion.

## II.

Although Wells did not respond to the motion for summary judgment, the Court must nevertheless analyze the merits of the motion because "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 381 (6th Cir. 2011) (citing *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)). Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

At this stage, the evidence of the non-moving party is to be believed, *id.* at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the

4

materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

**A.      Airline Regulations**

Wells's amended complaint first cites several federal airline regulations that he alleges UPS violated when it terminated him because of his training performance. (*See* D.N. 6, PageID.21–24) UPS moves for summary judgment on these claims on the ground that none of the statutes or regulations creates a private cause of action. (D.N. 29-1, PageID.138–39) The Court agrees. Wells first cites the Airline Safety and Federal Aviation Administration Extension Act of 2010 (the Extension Act). (D.N. 6, PageID.21 (citing Pub. L. 111-216, codified at 49 U.S.C. § 44701)) He specifically references two subsections of the Extension Act that require all air carriers to "[e]stablish or modify training programs to accommodate substantially different levels and types of flight experience by newly employed flight crewmembers" and "establish remedial training programs for flight crewmembers who have demonstrated performance deficiencies or experienced failures in the training environment." (*Id.* (citing Pub. L. 111-216 § 206(C) and § 208(a)(2))) Wells argues that UPS's decision to terminate him was "arbitrary and capricious" and "a departure from standardized and mandated airline norms" as set forth in the Extension Act. (*Id.*, PageID.24)

In *Alexander v. Sandoval*, the Supreme Court instructed that when determining whether a statute creates a private cause of action, a court begins and ends its "search for Congress's intent with the text and structure of" the statute. 532 U.S. 275, 288 (2001). If the text "reveals no congressional intent to create a private right of action," then a court should not "infer a private

remedy." *Id.* at 289 (citation omitted). Applying this test to the Extension Act, nothing in the statutory text explicitly creates any private right of action, and particularly not one to remedy a pilot's allegedly unlawful termination. *See* Pub. L. 111-216, codified at 49 U.S.C. § 44701. The statute was passed to "extend the funding and expenditure authority of the Airport and Airway Trust Fund" and "to improve airline safety," *id.*, and its provisions outline procedures for implementing new safety guidelines, including those for "pilot training improvement." *Id.* at Title II. The text therefore "reveals no congressional intent" suggesting that it was intended to create a private right of action like the one that Wells is attempting to bring. *Alexander*, 532 U.S. at 289.

In *Brown v. Byard*, the Southern District of Ohio considered whether a similar statute implementing federal aviation regulations created a private cause of action. 600 F. Supp. 396, 397 (S.D. Ohio 1984) (analyzing the Federal Aviation Act). The *Brown* court concluded that "[b]ecause of the Act's emphasis on administrative regulation and enforcement," it is "highly improbable that Congress absentmindedly forgot to mention an intended private action." *Id.* at 398–99 (quoting *In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 407 (9th Cir. 1983)). It therefore held that the Act "does not contain an express or an implied private right of action." *Id.* at 399; *see id.* at 397–98 (collecting cases holding the same); *see also Skydive Factory, Inc. v. Me. Aviation Corp.*, 268 F. Supp. 2d 61, 64 (D. Me. 2003) ("[T]he Federal Aviation Act has no private cause of action." (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 340 n.13 (5th Cir. 1995))). Like the statute at issue in *Brown*, the statute that Wells invokes in his complaint was intended to regulate the federal aviation industry. It was not intended to create a private right of action for airline pilots seeking reinstatement. Because nothing in the text of the Extension Act suggests that Congress intended it to create a private cause of action, the Court will not "infer a

6

private remedy." *Alexander*, 532 U.S. at 289. UPS is therefore entitled to summary judgment on this claim. *Id.*; *Brown*, 600 F. Supp. at 399; *Skydive Factory, Inc.*, 268 F. Supp. 2d at 64.

Wells next cites the Federal Aviation Regulations (FARs), and specifically Section 121.415, which requires that all aviation training programs "identify pilots with performance deficiencies" and "include methods for remedial training" of such pilots. (D.N. 6, PageID.21 (citing 14 C.F.R. § 121-415(i)–(k))) Wells maintains that UPS "violate[d] FAR 121.415(i)(j)(k) in their refusal to provide the remedial training that the law requires." (D.N. 1, PageID.4) The Sixth Circuit has made clear that "federal regulations cannot themselves create a cause of action; that is a function of the legislature." *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993 (citing *Stewart v. Bernstein*, 769 F.2d 1088, 1092–93 n.6 (5th Cir. 1985)). And "[a]lthough the Sixth Circuit has not squarely addressed whether the FARs can be enforced by a private right of action, a developing consensus among the federal courts hold[s] that a private right of action does not exist." *Airline Pros. Ass'n, Teamsters Loc. Union No. 1224 v. ABX Air, Inc.*, No. 1:12cv569, 2013 WL 3712341, at *3 (S.D. Ohio July 12, 2013) (collecting cases); *see also Murphy v. C.W.*, No. CIV.A. 03-5641, 2004 WL 2496843, at *5 n.15 (E.D. Pa. Nov. 4, 2004), *aff'd*, 158 F. App'x 393 (3d Cir. 2006) (entering summary judgment "'in the defendants' favor for their alleged violation of'" Chapter 14 of the FARs because the plaintiff "has failed to adduce any authority establishing a private right of action under that regulation"). Consistent with this consensus, the Court concludes that Section 121.415 of the FARs does not establish a private right of action, and UPS is therefore entitled to summary judgment on this claim. *See ABX Air, Inc.*, 2013 WL 3712341 at *3 (collecting cases).

Finally, Wells cites Advisory Circular 121-39, Air Carrier Pilot Remedial Training and Tracking Program. (D.N. 6, PageID.21) The FAA "issues advisory circulars to assist and inform

the public on matters affecting aviation." Sudie Thompson, *FAA Regulation of Ultralight Vehicles*, 49 J. Air L. & Com. 591, 597 n.54 (1984). The circular at issue, 121-39, "presents guidelines for developing and implementing remedial training and tracking of pilots,"[2] and Wells maintains that UPS "show[ed] a complete and total disregard for Advisory Circular 121-39" when it terminated him. (D.N. 1, PageID.4) Wells cites no authority suggesting that FAA circulars create a private right of action in federal court, however, and the Court is aware of none. (*See* D.N. 1; D.N. 6) Accordingly, UPS is entitled to summary judgment as to this claim as well.

**B.      Title VII**

UPS next moves for summary judgment on Wells's claim under Title VII of the Civil Rights Act. (D.N. 29-1, PageID.139) Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). Wells alleges that he "was wrongfully terminated and discriminated against due to [his] protected class/status as an African American." (D.N. 6, PageID.24) A plaintiff alleging Title VII discrimination may prove his case through either direct or indirect evidence. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007). UPS maintains that summary judgment is appropriate because Wells has provided no direct evidence of discrimination, and further, he has failed to establish a prima facie case of discrimination through indirect evidence under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (D.N. 29-1, PageID.140)

UPS is correct that Wells offers no direct evidence of racial discrimination. (*See* D.N. 1; D.N. 6) Wells therefore must establish through indirect evidence that "(1) []he was a member of

---

[2] Federal Aviation Administration, "AC 121-39 – Air Carrier Pilot Remedial Training and Tracking Program," Dec. 30, 2014, https://www.faa.gov/regulations_policies/advisory_circulars /index.cfm/go/document.information/documentID/1026589.

a protected class; (2) []he was qualified for the position; (3) []he suffered an adverse employment action; and (4) []he was 'treated differently than similarly situated non-protected employees.'" *Martinez-Gonzalez v. Lakeshore Staffing, Inc.*, 750 F. App'x 463, 469 (6th Cir. 2018) (quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)). UPS concedes that Wells satisfies the first prong because he is African American and is therefore a member of a protected class. (D.N. 29-1, PageID.140) And because the parties agree that UPS terminated Wells on July 19, 2019 (*see* D.N. 29-1, PageID.136; D.N. 29-7, PageID.220), Wells can establish the third prong of a prima facie case as termination is "clearly an adverse employment action." *Giron v. Tyco Elecs. Corp.*, 762 F. App'x 233, 237 (6th Cir. 2019) (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). The Court will consider the remaining two prongs below.

        **1.**      **Qualified for the Position**

To establish the second prong of a prima facie case of discrimination, Wells must put forward evidence that he was qualified for the position at issue. *Martinez-Gonzales*, 750 F. App'x at 469 (citation omitted). UPS maintains that Wells cannot do so because "the uncontested records of his training show – and Wells concedes – that he never achieved proficiency to operate a Boeing 757/767," and thus he "did not qualify for the job." (D.N. 29-1, PageID.140–41) Because Wells did not respond to the motion for summary judgment, or put forward any evidence of his own, the Court looks to the evidence that UPS provided regarding Wells's qualifications.

UPS provides extensive records of Wells's training evaluations throughout his time at UPS. (*See* D.N. 29-4; D.N. 29-5) During his training, Wells received comments from his instructors such as (1) "[h]is performance and his training show a lack of preparedness and a failure to keep up with the required procedures" (D.N. 29-5, PageID.216); (2) "First Officer Wells did not meet proficiency requirements to pass the PV. He rushes himself resulting in numerous errors" (D.N.

29-4, PageID.208); and (3) "[h]e is not yet ready to join the footprint of a normal student, but needs more reps." (D.N. 29-5, PageID.215)  When shown these evaluations in his deposition, Wells repeatedly acknowledged that all of the ratings and evaluations "appear[ed] to be accurate." (D.N. 29-3, PageID.163; *see id.*, PageID.164, 166, 168, 169, 175, 176 (articulating the same))) He further agreed that he "wasn't ready to take" his final competency exam. (*Id.*, PageID.169)

To establish the qualifications prong of a prima facie case, "a plaintiff must show that h[is] performance met h[is] employer's legitimate expectations at the time of h[is] discharge." *Vincent*, 514 F.3d at 495 (citing *McClain v. Nw. Cmty. Corr. Ctr. Jud. Corr. Bd.*, 440 F.3d 320, 334 (6th Cir. 2006))).  The evidence shows that Wells repeatedly failed to meet UPS's expectations with respect to his training and was falling behind other candidates. (*See generally* D.N. 29-4; D.N. 29-5)  Even after being given two additional opportunities to undergo remedial training (*see* D.N. 29-6, PageID.218), Wells continued to show "a clear failure to progress" such that a review panel "recommend[ed UPS] discontinue training." (*Id.*, PageID.219)  At the summary-judgment stage, the moving party bears the initial burden of identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322.  UPS has identified training records and deposition testimony that show the absence of a genuine issue of fact as to Wells's qualifications. (*See* D.N. 29-1; D.N. 29-3; D.N. 29-4; D.N. 29-5; D.N. 29-6)  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson*, 477 U.S. at 247–48.  Because Wells has not provided the Court with any evidence to rebut the compelling documentation provided by UPS, he has not met his burden of establishing that he was qualified for the position at issue. *Id.*; *see Martinez-Gonzales*, 750 F. App'x at 469 (citation omitted).

### 2. Treated Differently than those Similarly Situated

Even if Wells were qualified for the position, UPS argues that he nevertheless fails to satisfy the fourth prong of a prima facie case of discrimination because he has not identified a similarly situated employee outside of his protected class who was treated differently. (D.N. 29-1, PageID.141) The Sixth Circuit has instructed that for purposes of analyzing whether two employees receiving different compensation are similarly situated, "the relevant factors include the skill, effort, and responsibilities of each job and the working conditions under which each job is performed." *Conti v. Universal Enters., Inc.*, 50 F. App'x 690, 699 (6th Cir. 2002). A plaintiff need not establish that he and another employee "had the exact same qualifications," however, but only that they possess "similar qualifications." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011). Nowhere in Wells's complaint does he identify a non-protected UPS employee who performed similarly in training and was not terminated. (*See* D.N. 1) And because Wells did not respond to the motion for summary judgment, he has not provided the Court with any documentation obtained through discovery to suggest that such an individual exists. Accordingly, Wells cannot meet the fourth prong of a prima facie case because he "failed to identify a similarly situated person" outside of his protected class who was treated differently. *Offutt v. Warren Cnty. Reg'l Jail*, 109 F. App'x 740, 743 (6th Cir. 2004).

In sum, Wells has failed to establish the second and fourth prongs of a prima facie case of discrimination. UPS is thus entitled to summary judgment on his Title VII claim. *Conti*, 50 F. App'x at 697–98.

**C.   Section 1981**

UPS next moves for summary judgment on Wells's claim under 42 U.S.C. § 1981. (D.N. 29-1, PageID.143) Section 1981 "prohibits intentional race discrimination in the making and

11

enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001)). The Sixth Circuit has made clear that Section 1981 claims "are governed by the same burden-shifting standards as the claims under Title VII." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001) (collecting cases). Therefore, because "the analysis and conclusions concerning the Title VII claims discussed above apply equally to the parallel claims brought under . . . § 1981," UPS is entitled to summary judgment on the Section 1981 claim as well. *Id.*

**D.      Section 1985**

UPS finally argues that it is entitled to summary judgment on Wells's claim under 42 U.S.C. § 1985(3). (D.N. 29-1, PageID.143–44) Section 1985(3) prohibits conspiracies "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1985). UPS argues that this claim is barred by the intra-corporate conspiracy doctrine. (D.N. 29-1, PageID.143–44) Under that doctrine, "where 'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. Of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)). Here, Wells alleges that UPS employees worked collectively to discriminate against him based on his race. (*See* D.N. 6, PageID.23–24) Because those employees are "all members of the same collective entity," UPS, any claim against them under Section 1985 is barred by the intra-corporate conspiracy doctrine. *Amadasu*, 514 F.3d at 507 (citation omitted). UPS is therefore entitled to summary judgment on this claim. *Id.*

## III.

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that United Parcel Service Co.'s motion for summary judgment (D.N. 29) is **GRANTED**. A separate judgment will be entered this date. Upon its entry, this matter will be **CLOSED**.

August 23, 2023

David J. Hale, Judge
United States District Court